## GENTRY et al. v. BILLING.

### No. 7113.

Circuit Court of Appeals, Ninth Circuit.

Nov. 16, 1934.

926

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

The facts stated by Circuit Judge Mack, who participated in the first hearing, are as follows:

In August, 1930, plaintiff, a citizen of Great Britain, then owner of the steamships Chiapas and Guerrero, was contractually bound to put the Chiapas into service by October 29, 1930, in carrying passengers from California to Mexico, and later, if necessary, to supply other vessels for this purpose. While engaged in fitting out the Chiapas, he became financially embarrassed, and a number of parties supplying labor and material thus acquired liens against the vessel. On November 10, 1930, a libel in admiralty was filed by two of the creditors against the Chiapas, and on November 11, 1930, the United States marshal took possession thereunder. The parties stipulated that the marshal retained custody of the vessel from that date until September 26, 1931, when, pursuant to court order, it was sold at public sale. Defendant Gentry's attorney was purchaser for Gentry.

Plaintiff, desiring to secure a loan to pay off his debts and thus to avert libels, had sought the aid of defendant Wilson, who on October 23, 1930, introduced him to Gentry. The latter in turn introduced him to defendant McKinney. At a meeting between the parties on the following day, Gentry advanced plaintiff $12,500; to secure its repayment plaintiff gave Gentry a bill of sale of the Chiapas and received back an option to repurchase it within six months for $14,-062.50. At the same time he received a written authorization to operate the Chiapas for a period of six months as Gentry's agent. On November 12th, Gentry in writing revoked this authorization.

The foregoing facts are undisputed. As to other matters in the testimony, however, there is considerable conflict. For the purposes of this case, we shall assume plaintiff's version of the facts in dispute. According to his witnesses, Gentry had originally agreed to lend him $25,000 and not $12,500; this was to be secured by a first mortgage on the Chiapas. Defendants represented to plaintiff that the bill of sale, together with the option for repurchase was equivalent in California to a mortgage, and on this representation the proceeding was acceptable in this respect to plaintiff. Gentry, however, then refused to advance more than $12,500; he agreed, however, to lend an additional $12,500 in a few days, to be secured by a similar charge on the Guerrero, to which plaintiff assented.

There is no controversy that the vessel sailed on time, that a few days later Gentry refused to make the additional advance, that plaintiff thereupon said that he would return the vessel at once to California in order to protect his other creditors, and that he did so on November 5th.

Soon after the marshal took possession of the vessel, defendants boarded her, gave some orders to the captain, and paid off the crew. On November 14th, the marshal, through a joint letter written by his representative and the purser, informed plaintiff that he would not be allowed to come on board, because his name was not on the list of persons furnished them by Gentry as those to be permitted to board the vessel. We find it unnecessary to state any of the other facts testified to, in view of the conclusions that we have reached.

The complaint in the first fourteen paragraphs alleges plaintiff's version of the facts, and states that "subsequent to August 1, 1930 and prior to October 24, 1930, plaintiff was the sole and exclusive owner" of the Chiapas. Further, "at all times herein referred to subsequent to August 1, 1930, plaintiff was and now is entitled to the exclusive possession of the Chiapas." In the following paragraph, plaintiff charges that defendants "in furtherance of their plan to cheat and defraud" him, took physical possession of the ship and of plaintiff's personal property thereon, and since that date "have exercised and asserted absolute physical dominion and control over said Chiapas and converted said vessel and all of said personal

property to their own use." As compensatory damages, plaintiff asks $125,000, the alleged value of the ship, and in the next paragraph he asks in addition for exemplary damages. Thereupon, distinctly stating for a "separate and further cause of action," after first reincorporating all matters contained in paragraphs 1 to 14, inclusive, "of his first cause of action," he proceeds to charge the seizure of the Chiapas on November 11th, and its subsequent loss to him as due to "the fraudulent and deceitful conduct of said defendants as hereinbefore alleged and in consummation of their fraudulent conspiracy," wherefore he demands compensation for several items of specific damages and also for exemplary damages. Finally he prays judgment "upon his first cause of action" for $125,000, and $50,000 exemplary damages, and "upon his second cause of action" for damages in the sum of $175,000.

Leonard J. Meyberg and P. N. McCloskey, both of Los Angeles, Cal., for appellants.

Mathes & Sheppard, of Los Angeles, Cal., for appellee.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

PER CURIAM.

This cause has been under submission for some time. The court has carefully examined the record and has concluded that the evidence fails to show there was conversion of the ship by reason of the transaction which occurred on the 11th day of November. The cause was submitted to the jury by the court on the question of whether or not such transaction of November 11th was one of conversion, and upon that theory the jury was instructed and returned its verdict. We are satisfied that the proof does not show conversion for the reason that at the time of the alleged conversion the property was in the lawful custody of the United States marshal. General Motors Acceptance Corp. v. Dallas, 198 Cal. 365, 245 P. 184. In this regard we adopt and quote from the opinion prepared by Judge Mack prior to the resubmission, as follows:

"Trover is essentially a possessory action; plaintiff must allege and prove that at the time of the alleged conversion he either had the actual possession of the property or was the owner thereof and as such entitled to its immediate possession. General Motors Acceptance Corp. v. Dallas, 198 Cal. 365, 245 P. 184 (1926). Assuming that despite the bill of sale and because of the conceded character of the transaction as a se-

cured loan and not as a sale with option of repurchase, plaintiff was at all times the owner of the property, nevertheless, from and after the levy of the attachments under the libels he was no longer either in actual or constructive possession or as owner entitled to reclaim the immediate possession thereof. At and after that time the United States marshal was both in actual possession and entitled to hold the possession as he did until the confirmation of the sale under the decree. Plaintiff concedes the marshal's custody during that time but apparently denies that this is equivalent to possession. The law is, however, well settled that the officer's interest after levy is such that he can maintain an action of trover. Drake, Attachment (7th Ed. 1891) 279, and cases cited; Bowers, Conversion (1917) § 404, and cases cited. Plaintiff could reclaim possession only if and when the libelants and the intervening creditors, among whom was Gentry for the amount of his loan, should fail to maintain their libels.

"There is no substantial evidence that the defendants or any of them were instrumental in causing the original libels to be filed as a step in their alleged conspiracy to defraud, although it is clear that Gentry subsequently bought up the original claims, as he said to protect his own advances. None of the defendants had any part in plaintiff's incurring these claims; concededly they were plaintiff's valid obligations. Even if Gentry by his failure to pay over the entire $25,000 and thus to supply plaintiff with the funds with which he might have paid off the claims, was responsible in a sense for the filing of the libels and for the damage thereby done to the plaintiff, nevertheless, his liability and that of his alleged coconspirators for their alleged wrongdoing would not nullify the libels themselves or affect the marshal's possession thereunder. Whatever that liability might be, plaintiff none the less remained indebted both for the actual cash advanced by Gentry and for his indebtedness to the libelants or to Gentry as their assignee.

"As long as the marshal's actual possession remains undisturbed, there is no conversion. If his possession is wrongfully taken from him, he has the immediate right to repossession and is therefore the proper party to bring the action in trover. True it is that an attaching creditor whose lien has been lost by a sheriff's wrongful relinquishment of the possession may also sue in trover in California and perhaps in some other states. McCaffey Canning Co., Inc., v. Bank of America, 109 Cal. App. 415, 294 P. 45

(1930). The basis of such right of action is that the sheriff's possession is as agent of the lienor. It does not, however, follow from this that a defrauded owner has any possession or right of possession if the officer has taken the property under an attachment not against the wrongdoer but against the defrauded owner himself. In no sense is the officer the defrauded owner's agent so as to vest the latter with any right equivalent to that of the attaching creditor in the McCaffey Canning Co. Case.

"In charging the jury, the judge explicitly stated that the fact that the Chiapas was in the legal custody of the marshal at the time of the alleged conversion was immaterial. To this instruction defendants duly and specifically excepted on the ground that the custody of the marshal prevented an action for conversion, meaning, of course, an action by plaintiff. The question thus presented for review is whether or not the fact that the marshal held the vessel under proper libels at the time of the alleged acts of conversion bars an action of trover by plaintiff, concededly the then owner, although subject to whatever rights Gentry obtained under the bill of sale as security for the loan."

The appellee did not have the right of possession at the time the alleged conversion took place nor at the time the action was brought.

For these reasons it will be necessary to reverse the judgment so far as it pertains to the first cause of action.

We are also satisfied that the second cause of action is so intermingled with the first cause of action that the erroneous instructions of the court common to both causes of action, require a reversal of the judgment in its entirety.

As to whether or not the complaint states a cause of action we do not decide. The plaintiff has alleged that the contract on which he counts as having been entered into with the fraudulent intent not to perform is usurious. The defendant claimed in the lower court that it was not usurious, that the difference in amount between the 12 per cent. interest permitted by the usury statute of California and amount reserved by the option to repurchase constituted a brokerage commission to Wilson. By reason of this allegation of usury it is a serious question as to whether or not the complaint states a cause of action because it charges a fraudulent intent to make and not to perform an agreement to lend money at a usurious rate of interest; such a loan being denounced as a crime by the usury law of California. California Stat. 1919, p. lxxxiii, § 3. Counsel's attention being called to this matter, the appellee has expressed a desire to withdraw the allegation of usury and requests that he be permitted to do so by amendment in the lower court. We do not decide as to whether or not the contract to make a loan was usurious or the effect of such an agreement if made, but, acting upon the suggestion of the appellee that, if given the opportunity to amend his complaint he will do so by eliminating the allegations of usury, the judgment of the District Court will be reversed, with leave to the appellee to amend his complaint by withdrawing the allegation of usury and by any other amendment consistent with the law relating to the amendment of pleadings.

We called for a discussion of the appropriate measure of damages for the alleged fraud, but that question is not clearly presented for review by the record, and we consequently express no opinion thereon.

Judgment reversed, with leave to the appellee to amend his complaint as above stated.